# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DANYELL DARSHIEK THOMAS,

Defendant-Appellant.

UNPUBLISHED
August 11, 2016

No. 326232
Kent Circuit Court
LC No. 14-000789-FC

Before: SERVITTO, P.J., and MARKEY and GLEICHER, JJ.

PER CURIAM.

Following a jury trial, defendant Danyell Darshiek Thomas was convicted of first-degree felony murder, MCL 750.316(1)(b); conspiracy to commit armed robbery, MCL 750.157a and MCL 750.529; assault with intent to rob while armed, MCL 750.89; and possession of a firearm during the commission of a felony ("felony-firearm"), MCL 750.227b. The trial court sentenced defendant as a third-offense habitual offender, MCL 769.11, to life without parole for felony murder, 20 to 40 years' imprisonment for conspiracy to commit armed robbery, 20 to 40 years' imprisonment for assault with intent to rob while armed, and to two years' imprisonment for felony-firearm. Defendant now appeals by right. We affirm.

Defendant first argues that he was denied a fair trial through the admission of prior acts evidence of a domestic incident involving a gun and the admission of a rap video that defendant made. "The admissibility of other acts evidence is within the trial court's discretion and will be reversed on appeal only when there has been a clear abuse of discretion." *People v Waclawski*, 286 Mich App 634, 669-670; 780 NW2d 321 (2009). A trial court's decision is an abuse of discretion "when it chooses an outcome that is outside the range of reasonable and principled outcomes." *Id.* at 670. "When the decision involves a preliminary question of law however, such as whether a rule of evidence precludes admission," this Court reviews the question de novo. *People v Mardlin*, 487 Mich 609, 614; 790 NW2d 607 (2010).

MRE 404(b)(1) provides the general rule that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." But such evidence may be admissible for:

> other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts

are contemporaneous with, or prior or subsequent to the conduct at issue in the case. [MRE 404(b)(1).]

Our Supreme Court in *People v VanderVliet*, 444 Mich 52, 74-75; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994), articulated four factors to determine the admissibility of other acts evidence under MRE 404(b)(1). First, the other acts evidence must be offered for a proper purpose. *Id*. at 74. Second, "the evidence must be relevant . . . to an issue or fact of consequence at trial." *Id*. Third, the trial judge must employ the balancing test of MRE 403 to determine whether to exclude the evidence because the danger of unfair prejudice substantially outweighs the probative value of the evidence. *Id*. at 74-75. The "fourth factor articulated in *VanderVliet*, which does not fully conform to the idea of a test expressed in the preceding three factors, suggests that a party may request a limiting instruction under MRE 105 if the trial court decides to admit the challenged evidence." *People v Hawkins*, 245 Mich App 439, 448; 628 NW2d 105 (2001).

First, a proper purpose under MRE 404(b) exists when evidence is relevant under any noncharacter theory. *VanderVliet*, 444 Mich at 65. "Stated otherwise, the prosecutor must offer the other acts evidence under something other than a character to conduct theory, i.e., something other than a character to conduct theory. *Id*. at 74. MRE 404(b)(1) provides a list of proper purposes such as identity or scheme, plan, or system in doing an act; however, this list is not exhaustive. *People v Martzke*, 251 Mich App 282, 290; 651 NW2d 490 (2002). "Evidence relevant to a noncharacter purpose is *admissible* under MRE 404(b) *even if* it also reflects on a defendant's character," and "[e]vidence is *inadmissible* under this rule *only* if it is relevant *solely* to the defendant's character or criminal propensity." *Mardlin*, 487 Mich at 615-616.

Here, the prosecution offered the gun to show defendant's connection to the murder weapon and to explain why codefendant Dijana Kilic's DNA was on the inside of the barrel of the gun. While these are not expressly listed purposes under MRE 404(b)(1), "the litany of proper purposes contained in MRE 404(b) is not a finite list." *Martzke*, 251 Mich App at 290. The prosecution's proffered purposes were proper because they were not related to character. *VanderVliet*, 444 Mich at 65, 74. Therefore, the first requirement, proper purpose, is met. See also *People v Jackson*, 498 Mich 246, 271; 869 NW2d 253 (2015) (stating that "courts have often considered whether evidence of an 'other act' is necessary to 'complete the story' of the charged offense when evaluating whether that evidence has been offered for a proper nonpropensity purpose under MRE 404(b)").

The second factor recognizes that it is not enough for admissibility purposes to articulate a proper purpose. *People v Crawford*, 458 Mich 376, 387; 582 NW2d 785 (1998). The party seeking admission must show relevance. *Id*. MRE 402 provides that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, these rules, or other rules adopted by the Supreme Court. Evidence which is not relevant is not admissible." MRE 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pursuant to these rules, evidence must have probative value and be material. *Crawford*, 458 Mich at 388. Materiality requires the evidence to be related to a fact of consequence (i.e., "is the fact to be proven truly in issue?"). *Id*. Accordingly, "[t]he relationship

of the elements of the charge, the theories of admissibility, and the defenses asserted governs what is relevant and material." *VanderVliet*, 444 Mich at 75. The probative value inquiry "asks whether the proffered evidence tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Crawford*, 458 Mich at 389-390 (quotation marks and citation omitted). But the evidence must be probative of a proper purpose. *Id*. at 390. See also *VanderVliet*, 444 Mich at 74 (explaining that "[t]he evidence must be relevant to an issue other than propensity").

Here, evidence concerning defendant's prior assault on Dijana Kilic and putting the barrel of the gun down her throat was material because it related to a fact of consequence (i.e., who had access to and used the murder weapon). Defendant's DNA was not found on the gun, and Dijana's DNA was found on the side of the gun along with inside of the barrel of the gun. Access to the gun and, ultimately, who fired the weapon that killed the victim was at issue in the case. *Crawford*, 458 Mich at 387-387. Next, the prior assault on Dijana and putting the barrel of the gun down her throat were probative of this material issue. If defendant used the murder weapon to assault Dijana, it shows that he had access to the murder weapon and made it more probable that he committed the instant offense with the murder weapon. Moreover, the fact that the gun was shoved down Dijana's throat explains why her DNA was on the inside of the barrel and on the side of the gun. This explanation is probative towards a material issue because without the explanation, defendant's argument that he did not use the gun to shoot the victim is stronger. Thus, the reason why Dijana's DNA was present on the gun is an important "fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id*. Therefore, the second requirement, relevance, is met. *VanderVliet*, 444 Mich at 74.

Nonetheless, defendant argues that the evidence was irrelevant because there was insufficient evidence to prove that the assault occurred or that he committed it. But Dijana testified that on September 11, 2013, she confronted defendant about some Facebook messages that involved another girl. According to Dijana, defendant hit her in the face when she mentioned it; she fell to the floor, and then he went into another room and came back with the same gun that was later used in the murder. Dijana testified that defendant "shoved the gun down [her] throat," that her throat was scratched from the gun, and that she coughed up blood and her face was bruised as a result of the injury. Dijana's testimony regarding the incident was sufficient to support a finding by a jury that the act occurred and that defendant committed the act. Consequently, defendant's argument that the act was not relevant because there was insufficient evidence to show that it occurred and that he committed it is without merit.

Addressing the third *VanderVliet* factor, under MRE 403, we weigh the notion that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." "All relevant evidence is prejudicial; only *unfairly* prejudicial evidence may be excluded." *People v Danto*, 294 Mich App 596, 600; 822 NW2d 600 (2011). Danger of unfair prejudice exists when "*marginally* probative evidence will be given undue or preemptive weight by the jury." *People v Feezel*, 486 Mich 184, 198; 783 NW2d 67 (2010), quoting *Crawford*, 458 Mich at 397-398.

As described *supra*, an explanation of why Dijana's DNA was on the murder weapon and the fact that defendant had access to the murder weapon near the time of the murder was highly

probative to the ultimate determination of who used the murder weapon to kill the victim. Moreover, during final jury instructions, the trial court noted that the prosecution presented evidence regarding an incident involving the gun and Dijana and gave a limiting instruction that the jury may only use this evidence to "think about whether this tends to show how the DNA of Dijana Kilic was found on the gun." This limiting instruction lessened the potential for prejudice because "jurors are presumed to follow their instructions." *People v Mann*, 288 Mich App 114, 118; 792 NW2d 53 (2010). Given the high probative value, the fact that there is no indication that this evidence was given preemptive weight, and the limiting instruction, we agree that the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice. MRE 403; *Feezel*, 486 Mich at 198. Hence, the trial court's decision to admit the evidence was within the principled range of outcomes, and it did not abuse its discretion in this respect. *Waclawski*, 286 Mich App at 670. Further, defendant was not denied the right to a fair trial through the admission of this evidence.

With respect to the rap video, defendant waived this issue. "A defendant may not waive objection to an issue before the trial court and then raise the issue as an error on appeal." *People v Aldrich*, 246 Mich App 101, 111; 631 NW2d 67 (2001). "[W]aiver is the intentional relinquishment or abandonment of a known right." *People v Vaughn*, 491 Mich 642, 663; 821 NW2d 288 (2012) (quotation marks and citation omitted). "A defendant who waives a right extinguishes the underlying error and may not seek appellate review of a claimed violation of that right." *Id*. Specifically, "[a] defendant should not be allowed to assign error on appeal to something his own counsel deemed proper at trial." *People v Green*, 228 Mich App 684, 691; 580 NW2d 444 (1998). "To do so would allow a defendant to harbor error as an appellate parachute." *Id*. Here, defendant specifically withdrew his objection to the rap video before jury selection began; therefore, he waived this issue for appellate review, *Aldrich*, 246 Mich App at 111, and extinguished the alleged error, *Vaughn*, 491 Mich at 663. To allow defendant to assign error on appeal to the admission of the rap video after he withdrew his objection would allow him to harbor this alleged error as an appellate parachute. *Green*, 228 Mich App at 691.

Next, defendant argues that a due process violation occurred because the prosecution suppressed retrieval of data from Dijana's iPad. "This Court reviews due process claims, such as allegations of a *Brady*[1] violation, de novo." *People v Stokes*, 312 Mich App 181, 189; 877 NW2d 752 (2015).

Our Supreme Court explained in *People v Chenault*, 495 Mich 142, 149; 845 NW2d 731 (2014), that "[t]he Supreme Court of the United States held in *Brady* that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." The *Chenault* Court explained that there are three factors required to establish a *Brady* violation: "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *Id*. at 150.

---

[1] *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

Here, defendant has not established that the prosecution suppressed the evidence. The trial court found that the iPad was made available to defendant. Defendant does not dispute this finding of fact. However, he argues that "[t]he prosecution failed to timely have the Ipad unlocked and the evidence recovered." The United States Supreme Court has explained that a defendant's due process rights are not violated "when the police fail to use a particular investigatory tool." *Arizona v Youngblood*, 488 US 51, 58-59; 109 S Ct 333, 338; 102 L Ed 2d 281 (1988). The Court further explained that "[t]he situation [] is no different than a prosecution for drunken driving that rests on police observation alone; the defendant is free to argue to the finder of fact that a breathalyzer test might have been exculpatory, but the police do not have a constitutional duty to perform any particular tests." *Id*. at 59. See also *People v Coy*, 258 Mich App 1, 21; 669 NW2d 831 (2003) (explaining that due process does not "require that the prosecution seek and find exculpatory evidence"). Because the prosecution made the iPad available to defendant, see *Chenault*, 495 Mich at 149-150 (explaining that the prosecution must suppress evidence to establish a *Brady* violation), and because the prosecution is not required to "seek and find exculpatory evidence," *Coy*, 258 Mich App at 21, defendant has not established a due process violation because the prosecution did not have the iPad unlocked. Moreover, and more importantly, defendant has not established that anything on the iPad would have been exculpatory or impeaching such that a *Brady* violation might have occurred. *Chenault*, 495 Mich at 150-151. Defendant's argument is speculative at best, and because he has not established that any information on the iPad was favorable to him, he has not established a *Brady* violation. *Id*.

Finally, defendant argues that he is entitled to resentencing because the trial court erred in scoring Offense Variables (OV) 10 and 14. In *People v Watkins*, 209 Mich App 1, 5; 530 NW2d 111 (1995), this Court held that its "affirmance of [the] defendant['s] first-degree murder conviction, with its mandatory life sentence, effectively nullifie[d] the significance of any sentences for the companion convictions." Further, in *People v Poole*, 218 Mich App 702, 719; 555 NW2d 485 (1996), this Court held that, even if the defendant's challenge to a lesser sentence had merit, "he [was] not entitled to any relief because [it] [was] upholding his mandatory life sentence."

Here, defendant was sentenced to mandatory life without parole. The sentences for conspiracy to commit armed robbery and assault with intent to rob while armed are concurrent with the mandatory life without parole sentence. Therefore, the mandatory life without parole sentence "effectively nullifies the significance of any sentences for" defendant's concurrent convictions, *Watkins*, 209 Mich App at 5, and defendant is not entitled to relief, *Poole*, 218 Mich App at 719. For these reasons, we need not address defendant's alleged scoring errors.

We affirm.

/s/ Deborah A. Servitto
/s/ Jane E. Markey
/s/ Elizabeth L. Gleicher